UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XEZAKIA ROUSE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LAURA BELTRAN,<br><br>　　　　　Defendant. | No.  2:21–cv–1085–JAM–KJN PS<br><br><br>ORDER<br><br>(ECF No. 4) |

　　　　Still pending before the court is plaintiff's motion to proceed in forma pauperis ("IFP") with his complaint filed June 21, 2021.[1]  (ECF Nos. 1-2.)  The undersigned declined to rule on the IFP motion initially because it appeared that this district, the Eastern District of California, might not be the proper venue for this case.  On August 11, 2021, the court ordered plaintiff to show cause within 14 days why this action should not be dismissed without prejudice or transferred to the U.S. District Court for the Northern District of California, where venue did appear proper, under 28 U.S.C. §§ 1404(a) or 1406(a).  (ECF No. 3.)

　　　　On August 30, 2021, several days beyond the deadline, plaintiff filed a response to the show cause order.  (ECF No. 6.)  Although plaintiff's response does not demonstrate that venue is proper in this district for his originally asserted claims, the response indicates some desire to

---

[1] Because plaintiff is self-represented, this action proceeds before the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

bring new claims for which venue would be proper in this district. Accordingly, the court grants plaintiff 30 days in which to either file an amended complaint to proceed in this court or to notify the court that he wishes to proceed on the original claims, which would be transferred to the Northern District of California.[2]

Plaintiff brought his original complaint against a single defendant, Laura Beltran, for allegedly improperly sharing his personal contact information with a local city attorney in Napa, California. (ECF No. 1.) Plaintiff asserted various invasion-of-privacy claims and an equal protection claim against Beltran, who is a staff person for State Assemblymember Cecilia Aguiar-Curry. (ECF No. 1 at 1, 4-5.) The privacy claims arose from Ms. Beltran's alleged act of forwarding plaintiff's home address and phone number to the Napa Assistant City Attorney after plaintiff contacted the Assemblymember's office with a request to "audit" an allegedly illegal law enforcement agency called the Napa Special Investigations Bureau ("NSIB"); and the equal protection claim arose from Ms. Beltran's alleged refusal to assist plaintiff further with his request upon learning that he is a resident of Ohio and no longer a constituent of the Assemblymember. (Id. at 4-5, 9.)

As explained in the order to show cause, the complaint and its attachments indicated that both of the complained-of actions by Ms. Beltran (her emails regarding plaintiff's contact information, and her subsequent refusal of plaintiff's request) allegedly took place at her work site in Napa, California, which is located in the Northern District of California, not the Eastern District of California. (ECF No. 3 at 3.) Cf. 28 U.S.C. § 1391(b)(2). The complaint also failed to allege that Ms. Beltran resides in the Eastern District of California, instead suggesting that she lives in Napa as well. (Id. at 2.) Cf. 28 U.S.C. § 1391(b)(1).

In response to the show cause order, plaintiff states that the original complaint filed was an incorrect and "inappropriate" filing; and he attempts to better outline his intended claims, which he argues belong in this district. (ECF No. 6 at 1-5.) According to plaintiff, "[t]he reason that the allegations against Laura Beltran should be in [this district] is because the Final Decision

---

[2] The undersigned continues to reserve ruling on plaintiff's IFP motion until it is clear whether this case will proceed in this court or be transferred.

to not release emails between Laura Beltran and the City/County of Napa came from her superiors in Sacramento." (Id. at 1.) The original complaint made a similar venue argument that the court expressly rejected in the order to show cause. (ECF No. 3 at 3 ("The allegation that a 'final decision' was made in Sacramento does not make venue proper in this district, however, because plaintiff is only suing Ms. Beltran herself for the two sets of actions identified above.").) Thus, plaintiff's response does not persuade the court that venue is proper in this district for the invasion-of-privacy and equal protection claims asserted against Ms. Beltran in the currently operative complaint (ECF No. 1).

However, plaintiff's response also indicates that he may no longer be litigating the two acts underlying his original complaint—that is, Ms. Beltran (1) sharing his contact information with the Napa Assistant City Attorney; and (2) refusing to help him further with his request to "audit" the NSIB. (See ECF No. 1 at 4-5, 9.) Plaintiff's response hardly mentions Ms. Beltran at all. Instead, plaintiff focuses on the California State Legislature's and Assemblymember Aguiar-Curry's refusal to release to plaintiff documents and communications regarding plaintiff's complaints about the NSIB. (ECF No. 6 at 1-2.) Plaintiff argues that California state officials and the Assemblymember's office could be part of a conspiracy to allow the NSIB to continue operating illegally as "an unregistered multi-agency law enforcement task force" in Napa, California. (Id. at 2-3.) Plaintiff attaches several documents including a Memorandum of Understanding governing the NSIB's establishment and operations, and emails from California state agencies indicating that they do not have certain registration records on file for the NSIB. (Id. at 9-26.) He argues that the state agencies in Sacramento "had a duty to properly handle the NSIB situation" but have taken no action. (Id. at 4.)

Plaintiff also attaches and emphasizes the import of a letter emailed to him on December 29, 2020, by the California Legislature's Assembly Rules Committee, in response to a December 13, 2020 records request he sent to Assemblymember Aguiar-Curry. (Id. at 4, 7-8.) Plaintiff apparently requested all emails and conversations forwarded by the Assemblymember's office to the Napa police and other Napa officials; and the Assembly Committee on Rules responded that any responsive records fell under the Legislative Open Records Act exemption for

"[c]orrespondence of and to individual Members of the Legislature and their staff." (Id. at 7 (quoting Cal. Gov't Code § 9075(h)).) Plaintiff complains that the State Legislature is thus "refusing to allow [him] access to how [his] personal information was used" after he requested protection from the NSIB. (Id. at 4.)

Thus, it appears that plaintiff may now be intending for this suit to challenge acts or omissions by various California state officials, occurring within the bounds of the Eastern District—as opposed to conduct by Ms. Beltran. Although there may be other problems with any federal claims plaintiff might assert against California officials regarding the NSIB's operations, venue would likely not be one of them. Accordingly, the undersigned gives plaintiff the opportunity to clarify whether he wishes (A) to amend his complaint to bring new claims against new defendant(s) in this court regarding their conduct with respect to the NSIB, or (B) to proceed on the current complaint against Ms. Beltran which would be transferred to the Northern District of California.

To aid plaintiff in considering these options, the court outlines the following guidelines that would apply to any amended complaint. First, because of the doctrine of sovereign immunity rooted in the Eleventh Amendment, plaintiff cannot—as he proposes in the OSC response—sue the State of California. See Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc., 810 F.2d 869, 873 (9th Cir. 1987) (under the Eleventh Amendment, "an unconsenting state is immune from suits brought in a federal court by citizens of another state or . . . citizens of her own"). Nor can plaintiff sue a California state agency without its express consent. See Sato v. Orange Cty. Dep't of Educ., 861 F.3d 923, 928 (9th Cir. 2017) (Eleventh Amendment immunity extends to state agencies). Instead, the amended complaint would have to name a specific state official or officials as defendants; and even then, the only type of claim over which this court would have jurisdiction would be one requesting to "enjoin" (that is, prevent) that official from taking actions that violate federal law. See Ex parte Young, 209 U.S. 123, 155-56 (1908); Sofamor Danek Grp., Inc. v. Brown, 124 F.3d 1179, 1183 (9th Cir. 1997) (discussing Ex parte Young holding that "federal courts have jurisdiction over suits against state officers to enjoin official actions that violate federal law, even if the state itself is immune from suit under the Eleventh Amendment").

Plaintiff cannot seek to recover money damages from the state official(s) because the exception applies only to claims for "prospective injunctive relief," that is, a court order governing a state official's future conduct. See Sofamor, 124 F.3d at 1184 (citing foundational Supreme Court cases).

Second, an amended complaint would have to both identify and then adequately plead a specific cause of action for which such injunctive relief may be granted. Broad claims of "due process" rights such as those in the current complaint and in the OSC response are insufficient. Plaintiff must identify a specific federal law or statute, such as 42 U.S.C. § 1983, that provides a civil cause of action over which this court would have jurisdiction. Plaintiff mentions a variety of federal criminal statutes in his OSC response, but plaintiff as a private citizen cannot enforce the criminal code. See Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (no private right of action for violation of criminal statutes). None of the criminal statutes under Title 18 of the U.S. Code can provide a valid cause of action for plaintiff.

If plaintiff were to proceed under § 1983, he would have to allege (1) what particular constitutional right of his was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). He would also have to allege that he suffered a specific injury as a result of a particular defendant's conduct and show an affirmative link between the injury and the violation of his rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). Were plaintiff to assert—via § 1983—a violation of his procedural due process rights under the Fourteenth Amendment, for instance, he would have to allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC, 893 F.3d 1136, 1147 (9th Cir. 2018).

While the court agrees with plaintiff that this district would be a proper venue for his potential claims against state officials regarding their alleged failure to take necessary actions regarding the NSIB, the court at this juncture expresses no opinion on whether such claims might survive the IFP screening inquiry. That remains to be decided, based on the allegations in any

forthcoming amended complaint plaintiff might choose to file.

The other claims suggested in plaintiff's OSC response and in his original complaint are not proper in this court.  For instance, if plaintiff wishes to pursue an action against the NSIB itself, venue would not be proper in this district (unless plaintiff could show that a substantial part of the NSIB's challenged conduct occurred in this district).  Further, if plaintiff's main complaint is that the State Legislature refuses to give him the documents he requested through Assemblymember Aguiar-Curry's office, the proper procedure for raising that complaint is to bring a suit in California state court under the Legislative Open Records Act ("LORA").  See Cal. Gov't Code § 9076 ("Any person may institute proceedings for injunctive or declarative relief in any court of competent jurisdiction to enforce his right to inspect any legislative record or class of legislative records under this article."); id. § 9077 (specifying that petition should be filed in "the superior court of the county where the records or some part thereof are situated").[3]

Finally, as explained above, if plaintiff wishes to pursue legal action against Ms. Beltran for her disclosure of his allegedly private contact information, the court will transfer this case to

---

[3] The full text of Section 9077 provides:

> Whenever it is made to appear by verified petition to the superior court of the county where the records or some part thereof are situated that certain legislative records are being improperly withheld from a member of the public, the court shall order the committee charged with withholding the records to disclose the legislative record or show cause why the committee should not do so. The court shall decide the case after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and such oral argument and additional evidence as the court may allow.
>
> If the court finds that the committee's decision to refuse disclosure is not justified under the provisions of Section 9074 or 9075, he shall order the committee to make the record available for inspection. If the judge determines that the committee was justified in refusing to make the record available for inspection, he shall return the item to the committee without disclosing its content with an order supporting the decision refusing disclosure. Any person who fails to obey the order of the court shall be cited to show cause why he is not in contempt of court.

Cal. Gov't Code § 9077.  The court expresses no opinion on plaintiff's likelihood of success with a state court LORA petition.

1  the Northern District of California where venue would be proper.

2      Should plaintiff opt to proceed with an amended complaint in this court, plaintiff is informed that the court cannot refer to a prior complaint or other filing in order to make the amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint, and once the first amended complaint is filed, the original complaint no longer serves any function in the case.

## ORDER

    Accordingly, IT IS HEREBY ORDERED that within 30 days of the entry of this order, plaintiff shall file either (A) an amended complaint that complies with the guidelines discussed above in order to proceed in this court, or (B) a notice that he wishes to proceed on the original complaint against Laura Beltran, in which case the action will then be transferred to the Northern District of California.

Dated: September 8, 2021

_____  
KENDALL J. NEWMAN  
UNITED STATES MAGISTRATE JUDGE

1085, rous