UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XEZAKIA ROUSE,<br><br>                    Plaintiff,<br><br>          v.<br><br>CALIFORNIA SECRETARY OF STATE,[1]<br><br>                    Defendant. | No. 2:21–cv–1085–JAM–KJN PS<br><br>FINDINGS & RECOMMENDATIONS<br><br>(ECF Nos. 2, 6) |

Still pending before the court is plaintiff's motion to proceed in forma pauperis ("IFP") which he filed with his original complaint on June 21, 2021.[2] (ECF Nos. 1-2.) The undersigned declined to rule on the IFP motion initially because it appeared that this district, the Eastern District of California, might not be the proper venue for the complaint as originally filed. In response to the court's prior orders, plaintiff filed a First Amended Complaint ("FAC") that cures the initial venue problem and is now before the undersigned for screening. (ECF No. 6.) Because the FAC fails to state a claim for relief and further amendment would be futile, the undersigned recommends dismissing this case and denying as moot plaintiff's IFP motion.

---

[1] The Clerk of Court is instructed to update the caption of the case on the court's docket to reflect a change in the named defendant from Laura Beltran to the California Secretary of State.

[2] Because plaintiff is self-represented, this action proceeds before the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

**Legal Standards**

Pursuant to the IFP statute, federal courts must screen IFP complaints and dismiss the case if the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or seeks monetary relief against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim.").

A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to allege a cognizable legal theory. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pled factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Papasan v. Allain, 478 U.S. 265, 283 (1986). The court is not, however, required to accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations." Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

Pro se pleadings are to be liberally construed. Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (liberal construction appropriate even post–Iqbal). Prior to dismissal, the court is to tell the plaintiff of deficiencies in the complaint and provide an opportunity to cure—if it appears at all possible the defects can be corrected. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if amendment would be futile, no leave to amend need be

given. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

**Procedural History**

Plaintiff brought his original complaint against a single defendant, Laura Beltran—a staff person for a California state Assemblymember—for allegedly improperly sharing plaintiff's personal contact information with a local city attorney in Napa, California. (ECF No. 1.) Plaintiff asserted various invasion-of-privacy claims and an equal protection claim against Ms. Beltran. (Id. at 1, 4-5.) The privacy claims arose from Ms. Beltran's alleged act of forwarding plaintiff's home address and phone number to the Napa Assistant City Attorney after plaintiff contacted the Assemblymember's office with a request to "audit" an allegedly illegal law enforcement agency called the Napa Special Investigations Bureau ("NSIB"); and the equal protection claim arose from Ms. Beltran's alleged refusal to assist plaintiff further with his request upon learning that he is a resident of Ohio and no longer a constituent of the Assemblymember. (Id. at 4-5, 9.)

On August 11, 2021, the undersigned issued an order to show cause why this action should not be dismissed for improper venue or transferred to the Northern District of California. (ECF No. 3.) The court found venue to be in question because both of the complained-of actions by Ms. Beltran allegedly took place at her work site in Napa, California—which is located in the Northern District of California, not the Eastern District of California—and the complaint suggested that Ms. Beltran also resided in Napa. (Id. at 2-3.) Cf. 28 U.S.C. §§ 1391(b)(1), (2).

In response to the show cause order, plaintiff stated that the original complaint was an incorrect and "inappropriate" filing, and he indicated some desire to shift the focus of the suit away from Ms. Beltran and onto unspecified California state officials who might be part of a conspiracy to allow the NSIB to continue operating illegally as "an unregistered multi-agency law enforcement task force" in Napa. (ECF No. 4 at 1-3.)

On September 8, 2021, the undersigned ordered plaintiff to either notify the court if he wished to proceed on the original claims against Ms. Beltran, in which case the action would be transferred to the Northern District of California, or alternatively to file an amended complaint to bring his new claims against new defendants in this court regarding their conduct with respect to the NSIB. (ECF No. 5 at 4, 7.) The court noted that, while this district would be the proper

venue for "potential claims against state officials regarding their alleged failure to take necessary actions regarding the NSIB," the court was "express[ing] no opinion on whether such claims might survive the IFP screening inquiry." (Id. at 5.) The court also explained that if plaintiff wished to pursue an action against the NSIB itself, venue most likely would not be proper in this district. (Id. at 6.)

### **The First Amended Complaint**

On October 4, 2021, opting to proceed with new claims in this court, plaintiff filed the FAC that is now before the undersigned for screening. (ECF No. 6.) Plaintiff, who now resides in Ohio, brings this complaint under 42 U.S.C. § 1983 against a sole defendant, the California Secretary of State, in her official capacity. (Id. at 2.) Plaintiff claims the Secretary of State violated his constitutional rights by exhibiting "Deliberate Indifference leading to Negligence," "Deliberate Indifference leading to Inadequate Training," and "Deliberate Indifference to National Security." (Id. at 3.) Specifically, he alleges that the Secretary had "knowledge of an unregistered law enforcement Task Force operating in California"—the NSIB—which "was reported to [have] been in cahoots with white supremacists in the area, experimenting on unsuspecting citizens with the Electromagnetic Spectrum"; and that "the State was told that the Unregistered task force was stalking minorities and entrapping them on cases in violation of due process." (Id. at 4.) He also claims that this activity violated his right to privacy and right against unlawful search and seizure. (Id.)

Plaintiff explains that, while on vacation in Napa, he was "accosted by white supremacists" and subjected to "har[]assment, kidnapping, rape, espionage, drugging, entrapment and acquiring of [his] human energy signal" without a warrant, "in violation of National Security laws." (Id.) Plaintiff discovered that the NSIB had "operated to remove [him] from Napa due to his Skin Color, Social Status, and his want to establish business in Napa." (Id.) He alleges that the NSIB "drove [him] mental, drugged him to make him look like a druggy, utilized radio equipment after kidnapping him to acquire his human energy signal, and keep setting him up on crimes in order to menace [him]." (Id.) He further alleges that members of the NSIB defamed him, turned the community against him, kidnapped and beat him, and entrapped him on

shoplifting charges.  (Id. at 5, 6.)

Plaintiff says he researched whether the NSIB was "legal," and "found out they have zero state oversight because they aren[']t properly registered."  (Id. at 4; see id. at 5 (alleging that several state agencies "said the task force isn't registered").)  According to plaintiff, "since the task force is unregistered, it has no law enforcement power."  (Id. at 5.)  He alleges that white supremacists in the NSIB are using their unregistered "'club' as a way to illegally keep unwanted minorities" out of the majority-white city of Napa.  (Id.)

Plaintiff asserts that "the State agency has a duty to ensure the rights of citizens . . . and to protect people" from unlawful policing and "unlawful task forces."  (Id. (referencing rights to privacy, due process, travel, and right "to not have personal energy signals acquired and manipulated via EMF military targeting procedures").)  Plaintiff claims that none of the harms he alleged "would be occurring if California was not negligent in training," and that "the real injury comes where the State has failed to prevent the Task force from operating and failed to [m]ake sure the task force isn[']t harming others."  (Id. at 6.)  He asserts that he and everyone who interacts with the NSIB "automatically has their rights violated sheerly due to the illegality of the force."  (Id.)

Plaintiff briefly references the California Tort Claims Act, alleging that "[t]he State . . . has a duty to insure law enforcement isn[']t negligent or hurting people."  (Id.)  He does not request any particular form of relief, stating that he does not know "how to get the State to enforce its own laws and cause the [NSIB] to abide by the laws of California and of the Nation."  (Id.)

**Analysis**

This action should be dismissed for failure "to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B).  Whatever injuries plaintiff might have suffered from his treatment by the NSIB, the FAC does not demonstrate how those injuries give rise to a claim against the Secretary of State under either § 1983 or California state law.

Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights."  Devereaux v. Abbey, 263 F.3d

5

1070, 1074 (9th Cir. 2001).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant (1) acted under color of state law; and (2) caused the plaintiff to be deprived of a right secured by the Constitution or laws of the United States.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009).  An officer "causes" a constitutional deprivation when he or she (a) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (b) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."  Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

      Here, there is no allegation to suggest that the California Secretary of State caused plaintiff a constitutional deprivation.  The various forms of "deliberate indifference" that plaintiff assigns to the Secretary do not amount to a deprivation of a constitutional right because deliberate indifference is a standard that applies to prisoners' Eighth Amendment conditions of confinement claims.  To the extent plaintiff means to assert a substantive due process right under the Fourteenth Amendment, he would need to allege official conduct that "shock[s] the conscience," Marsh v. County of San Diego, 680 F.3d 1148, 1154 (9th Cir. 2012) (quoting Rochin v. California, 342 U.S. 165, 172–73 (1952)), and is so "'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency[.]"  Breithaupt v. Abram, 352 U.S. 432, 435 (1957).  The Secretary of State's alleged failure to ensure that the NSIB was properly registered with the state cannot plausibly rise to the level of arbitrary state action that the Constitution forbids.  See Daniels v. Williams, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property."); Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006) (noting that only "the most egregious official conduct can be said to be arbitrary in a constitutional sense"); Ms. L. v. U.S Immigr. & Customs Enf't, 302 F. Supp. 3d 1149, 1166 (S.D. Cal. 2018) ("[T]he 'shock the conscience' standard erects a high hurdle for would-be claimants." (cleaned up)).

///

Even assuming the Secretary's alleged negligence could somehow rise to the required level of extremity, plaintiff fails to identify any actual legal duty that the Secretary failed to perform with respect to the NSIB's existence. Based on the FAC's allegations and certain attachments to plaintiff's original complaint and his response to the show cause order, it seems that plaintiff's legal theory is that the NSIB should be registered as a "joint powers authority" under the Joint Exercise of Powers Act, Cal. Gov't Code §§ 6500–6599.3, but the NSIB never so registered. (ECF No. 6 at 5; see ECF Nos. 1 at 10-12 (emails from offices of State Controller and Secretary of State informing plaintiff that no registration or Notice of Joint Powers Agreement was on file for NSIB), 4 at 11-13 (copies of Cal. Gov't Code §§ 6503.5–6503.7).) According to plaintiff, the Secretary of State was negligent in failing to ensure that the NSIB registered.

This theory rests on two mistaken understandings of the law. First, although in California "two or more public agencies by agreement may jointly exercise any power common to the contracting parties" and thereby create a new separate legal entity governed by the joint powers agreement, Cal. Gov't Code §§ 6502 (emphasis added), 6503.5, there is no requirement that every intergovernmental task force must be organized as a joint powers authority. San Diegans for Open Gov't v. City of San Diego, 242 Cal. App. 4th 416, 444 (Cal. Ct. App. 2015) (describing Joint Exercise of Powers Act as "permit[ting]" two or more municipalities to form joint powers authority; noting that participating agencies "may join in the creation of a separate entity" (emphasis added)); see Hervey v. Estes, 65 F.3d 784, 786 (9th Cir. 1995) (noting that, under similarly structured Washington joint powers law, "public agencies entering into an agreement for joint or cooperative action may, but need not, establish a separate legal entity"), as amended on denial of reh'g (Dec. 5, 1995).

California's appellate courts do not view interagency police task forces as automatically constituting joint powers authorities. See Harrison v. Cty. of San Mateo, No. A140671, 2016 WL 826469, at *5 (Cal. Ct. App. Mar. 3, 2016) (rejecting argument for a "'special case' for recognizing task forces as separate entities," because "no such rule exists"); McKee v. Los Angeles Interagency Metro. Police Apprehension Crime Task Force, 134 Cal. App. 4th 354, 359 (2005) ("L.A. Impact only constitutes a public agency if it was formed under the Joint Exercise of

7

Powers Act."). Instead, courts look to the intent of the public agencies entering into an agreement for joint or cooperative action—in this case, an interagency law enforcement task force—and they scrutinize the text of whatever agreement binds the parties, often a memorandum of understanding ("MOU"), to determine whether the interagency task force was formed as a joint powers authority. See McKee, 134 Cal. App. 4th at 359; Hervey, 65 F.3d at 792 ("The important determinant is what the parties set forth in their joint operating agreement."); id. (concluding that agreement did not contemplate a separate legal entity under Washington joint powers act). Plaintiff here provides no factual allegations to suggest that the NSIB was formed as a joint powers authority; plaintiff simply repeats, without elaboration, that the task force is "unregistered."[3] (ECF No. 6 at 4, 5.) Simply put, plaintiff fails to cite legal authority supporting his position that all joint task forces in California must register as joint powers authorities in order to legally operate.

Second, even if plaintiff could sufficiently allege that the NSIB is a joint powers authority, his theory for holding the Secretary of State accountable for the task force's failure to register lacks merit. True, the parties to an agreement to form a joint powers authority must notify the Secretary of State of their agreement within 30 days of its effective date; and a duly formed joint powers authority must also "furnish an additional copy of the notice of the agreement or amendment to the Secretary of State, who shall forward the copy to the Controller." Cal. Gov't Code § 6503.5. Until such filings are completed, the joint powers authority shall not "issue any bonds or incur indebtedness of any kind." Id. However, these requirements do not impose an

---

[3] Indeed, the only factual detail plaintiff provides about the NSIB's formation and governance is an unsigned MOU from 2019, attached to plaintiff's response to the order to show cause. (ECF No. 4 at 14-22.) The MOU indicates that it was entered into by the County of Napa and the cities of Napa, St. Helena, and Calistoga to establish a "multi-agency law enforcement task force to provide integrated law enforcement resources and investigative efforts across jurisdictional boundaries within the county." (Id. at 16.) The court notes that the MOU's Indemnification provision contains language similar to that of the agreement in Hervey, 65 F.3d at 792, which the Ninth Circuit held insufficient to show that the parties intended to make that interagency task force a separate legal entity under the Washington joint powers act. (ECF No. 4 at 21 ("For purposes of indemnification, each participating agency of the [NSIB] shall be responsible for the acts of its participating officer(s) and shall incur any liabilities arising out of the services and activities of those officers while participating in [NSIB] activities.").)

affirmative duty on the Secretary of State to ensure that all intergovernmental agencies that were formed as joint power authorities have duly registered themselves.  Thus, plaintiff fails to (1) allege that the Secretary of State failed to perform a legal duty owed to him, for purposes of asserting even a negligence claim, and (2) fails to link any omission by the Secretary to the injuries he describes at the hands of the NSIB.

To the extent plaintiff attempts to assert a negligence claim against the Secretary under the California Tort Claims Act, the FAC fails to allege the basic elements of negligence, as just explained.  He also fails to allege compliance with the CTCA's claim presentation requirement that a party seeking to recover money damages from a California public entity or its employees must submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues.  Cal. Gov't Code §§ 905, 911.2, 945.4, and 950.2.

Notwithstanding the seeming irrationality of many of plaintiff's allegations of harm, plaintiff's recourse for any violation of his constitutional rights by the NSIB is to bring suit under § 1983 against the NSIB and its component members.  See Hervey, 65 F.3d at 792 (noting that although intergovernmental task force was not a separate legal entity under a joint powers agreement, that does not mean its actions are beyond judicial review; and the task force's "component members may be sued and may be subject to joint and several liability for any constitutional violations").  As explained in the court's prior orders, however, this district would not be the proper venue to litigate such claims against Napa municipalities and officials for conduct occurring while plaintiff was in Napa.  Therefore, the court finds it unwarranted to allow plaintiff to further amend his complaint to assert such claims in this action.

The court extended plaintiff several opportunities to bring valid claims that would be proper in this district, but the FAC makes clear that the only claims for which this district is the proper venue are claims that lack a valid legal basis.  The undersigned therefore recommends dismissing this case without further leave to amend.  See Cahill, 80 F.3d at 339 (no leave to amend where amendment would be futile); Williams v. California, 764 F.3d 1002, 1018 (9th Cir. 2014) (failure to sufficiently articulate claims on two prior occasions demonstrates futility of further amendment).  This dismissal would be without prejudice to plaintiff bringing a new suit

against the NSIB and its component members in the proper judicial district, most likely the Northern District of California.

### **RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) be DENIED as moot;
2. The action be DISMISSED for failure to state a claim, under 28 U.S.C. § 1915(e)(2); and
3. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  November 16, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

1085, rous